STATE *ex rel.* DAVID KINCAID

*v.*

GEORGE L. SPILLERS, *Judge, etc.*

(No. 14694)

Decided July 15, 1980.

*O'Brien, Cassidy & Gallagher, William C. Gallagher,* for relator.

*Chauncey H. Browning,* Attorney General, *Victor A. Barone,* Deputy Attorney General, for respondent.

HARSHBARGER, JUSTICE:

David Kincaid was indicted for burglary by an Ohio County grand jury, was tried, and was convicted on March 9, 1979. After his motion for a new trial was granted, he was retried and reconvicted on July 25, 1979. He then moved for a judgment of acquittal because of a fatal variance between the indictment and the proof. The motion was granted, and on August 29, 1979, the court entered the judgment; but after reconsidering, the trial court overruled the August 29 order and sentenced him.

Petitioner contends that the revocation of the August 29 order which acquitted him subjected him to double jeopardy in violation of his federal and state constitutional rights, and that the trial court abused its power and acted without jurisdiction when it revoked its acquittal judgment.

## I.

Review of the recent spate of double jeopardy decisions by the United States Supreme Court, even though they may involve the federal government's right to appeal under 18 U.S.C., §3731, or to obtain a new trial, is helpful.

*United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), was the first of these cases. Jenkins was indicted for violating the Selective Service Act, and challenged the induction procedure's failure to allow him to raise his conscientious objector status. When he was indicted, the rule in his circuit was that he could plead his conscience, but while his suit was pending the circuit reversed itself. Nevertheless, the trial court "dis-

missed" the indictment and discharged him because of the former rule. The Circuit Court and United States Supreme Court were unable to determine whether the dismissal and discharge were based exclusively on the retroactivity of the new Circuit Court rule or on factual issues.

Justice Rehnquist wrote for the Court that if there was question about whether the acquittal was on factual or legal issues after a bench trial, the judgment was not appealable: an appeal might result in further proceedings going to the facts, and further trial about facts would be double jeopardy. However, if the trial court had specified that it found defendant guilty on the facts, but held for him on the law, its decision would have been appealable.[1]

In the same term that *Jenkins* was decided, Justice Marshall wrote an extensive opinion about the double jeopardy clause in *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). After a jury verdict of guilty, the trial court dismissed the indictment against defendant on his post-verdict motion. The Third Circuit refused to permit the government to appeal, and the Supreme Court reversed. Reciting the development of the double jeopardy provision and its genesis to prevent threats of multiple prosecutions, the Court decided that the result of an appeal would simply be reinstatement of a jury verdict and would not subject defendant to additional prosecution or trial.

The government's appeal in *Wilson* was derived from express statutory authority. Title 18, Section 3731, U.S.C., grants the government authority to appeal in a criminal case "from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall

---

[1] This opinion was later reversed in part by *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), *infra*, to the extent that if the dismissal on the facts were due to an action by defendant, retrial would be permitted.

lie where the double jeopardy clause of the United States Constitution prohibits further prosecution."[2]

The applicability of this statute in *Wilson* enabled the Court to distinguish *United States v. Sisson*, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), wherein entry of an arrest of judgment, which really amounted to a verdict of acquittal despite its misnomer, was held not appealable. *Sisson's* similarity to *Wilson* is remarkable. After a jury verdict of guilty, the *Sisson* court entered an arrest of judgment that acquitted the defendant. Because there was no statutory authority for the government to appeal an acquittal by the court, appeal was denied. *Wilson* distinguished rather than overruled *Sisson*.

The result was that if a court dismissed an indictment after a jury verdict of guilty, the government could appeal; if a court acquitted a defendant after a jury verdict of guilty, the government could not appeal. Acquittals, whether by court or jury, were not reviewable — not even when the judgment of acquittal was egregiously erroneous. *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962).

This concept was further articulated in *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Justice Brennan wrote that the government could not appeal a judgment of acquittal entered by a trial court pursuant to Federal Rules of Criminal Procedure, Rule 29. For purposes of the double jeopardy clause, there was no legal distinction between a verdict of acquittal by a jury and a judgment of acquittal by a court, whether it was entered before or after a jury verdict. Judges historically have been permitted to overrule a jury in favor of a criminal defendant. Even if a jury trial resulted in a verdict, the Rule 29 acquittal would bar appeal by the government. *Id.* 430 U.S., at 576. This was the law of the land until 1978.

---

[2] West Virginia has no statutory authorization for appeals by the state in criminal matters except about crimes relating to public revenues. W. Va. Const. art. VIII, §3, and W. Va. *Code*, 51-1-3.

*Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), clearly modified *Martin Linen.* In an 8-0 decision, the Court distinguished between trial court or appellate holdings reversing jury convictions for lack of sufficient evidence and those reversing jury convictions for trial error. Reversals for trial error were not decisions that the government had failed to prove its case. The double jeopardy clause only precluded a second trial if the reviewing court found that the evidence was insufficient to convict.

The Court's last significant double jeopardy opinion was *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, *rehearing denied,* 439 U.S. 883, 99 S.Ct. 226 (1978). The Court in *Scott* held, five to four, that a defendant's successful termination of a trial prior to any submission to a judge or jury on the ultimate question of guilt did not bar an appeal by the government or a new trial. It is the rationale, rather than the rule, that again attracts our attention. The Court noted that an intermediate court's reversal of a conviction is subject to further review, even if defendant has been discharged. *Forman v. United States,* 361 U.S. 416, 426, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960). Also, if a defendant's motion for mistrial is granted, retrial does not offend the double jeopardy clause. *United States v. Dinitz,* 424 U.S. 600, 609, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The Court then discussed whether a defendant was deprived of his option to go to the first jury, and if so, by whose act. If the first jury or court did not have an opportunity to make a finding on defendant's guilt or innocence because of his acts, the Court would not be concerned that he had become exposed to the embarrassment, expenses and ordeal of a second trial. The language in *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), concerning the continuing state of anxiety and insecurity that a second trial brings was inapplicable to a defendant moving a court to terminate his trial, grant him a mistrial motion, or review his conviction.

The most interesting portion of *Scott* with respect to Kincaid's rights is Footnote 7, which alters the apparent

rule in *Martin Linen*. After explaining that a judgment of acquittal based on insufficient evidence could not be appealed and terminated prosecution, the Court qualified *Martin Linen* by adding that its rule only applied if a second trial would be necessitated by a reversal. Although *Martin Linen* and *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), emphasize the finality of a judgment of acquittal, neither opinion expressly repudiated the assumption from *Jenkins* that a judgment of acquittal could be appealed if no retrial would be required on remand. *Scott, supra* 437 U.S., at 91, Footnote 7. The Court thus seemed to say that it would not be adverse to an appeal from a judgment of acquittal entered after a jury verdict of guilty.

The First Circuit followed this reasoning and permitted the government to appeal a district court order directing acquittal of a defendant who had been convicted before a magistrate. *United States v. Forcellati*, 26 Cr. L. 2322 (1st Cir. 1979), 48 L. W. 2481 (January 22, 1980).

The Supreme Court's double jeopardy decisions have not been wholly acceptable to us. After reviewing them, Chief Justice Neely stated that a verdict or judgment of acquittal is accorded "magic" by the United States Supreme Court which cannot be ignored. *State ex rel. Dowdy v. Robinson*, 159 W.Va. 154, 257 S.E.2d 167 (1979). In *Dowdy* the trial judge directed a jury to return a verdict of acquittal because of a fatal variance between the indictment and proof. A West Virginia statute, *Code*, 61-11-14, which permitted retrial where an acquittal resulted from a fatal variance between the allegation and proof, was held to be unconstitutional because it violated defendant's double jeopardy rights. We stated that "after a judgment acquitting a defendant no retrial on the same offense is permissible no matter how erroneous the acquittal might have been." *Dowdy, supra* 257 S.E.2d, at 169. Other states concur in this reasoning: *Block v. State*, 286 Md. 266, 407 A.2d 320 (1979); *State v. Lynch*, 79 N.J. 327, 399 A.2d 629 (1979); *People v. Wiley*, 27 Ill. Dec. 875, 389 N.E.2d 1283 (1979); *State v. Neames*, ___ La. ___, 377 So.2d 1018 (1979);

*People v. Jakiel,* 92 Mich. App. 754, 285 N.W.2d 448 (1979); *State v. Hurst,* ___ La. ___, 367 So.2d 1180 (1979); *State v Paulsen,* ___ Colo. ___, 601 P.2d 634 (1979) (en banc); *People v. Smith,* 89 Mich. App. 478, 280 N.W.2d 862 (1979); *State v. Offet,* 36 Or. App. 865, 585 P.2d 765 (1978); *State v. Whorton,* 225 Kan. 251, 589 P.2d 610 (1979); *Bunnell v. Superior Court of Santa Clara County,* 119 Cal. Rptr. 302, 531 P.2d 1086, 13 Ca.3d 592 (1975).

There is a notable difference between *Dowdy* and this case: here there is no necessity for a retrial. Both have the same alleged problem, i.e., a fatal variance between indictment and proof. *Dowdy* recognized that a double jeopardy sanction may have been avoided if the trial judge had stricken an erroneous street number from the indictment or declared a mistrial. It was the necessity for retrial that violated the double jeopardy sanction.

Our review of double jeopardy principles convinces us that a defendant who challenges conviction by appeal or post-verdict motion voluntarily subjects himself to reconsideration of matters that involve jeopardy to his liberty. By so choosing, a defendant waives his double jeopardy rights. (We do not need here to decide that the same result would obtain if defendant's choice was necessitated by gross misconduct by the government before or during trial.)

Kincaid was not subjected to another trial or additional punishment for the crime for which he was convicted when the trial court reversed its acquitting order. He filed post-verdict motions to ask the court to acquit him notwithstanding the verdict; the court acted in response to the motions, then reversed itself. If the State had been statutorily entitled to appeal the August 29 order, reversal here would not offend the double jeopardy provision, even if it resulted in reinstatement of a jury verdict of guilty. *Scott, supra* 437 U.S., at 91, Footnote 7; *Burks v. United States, supra; Forman v. United States, supra.* Reversal by a trial court itself therefore does not offend double jeopardy principles. We agree with this language in *Wilson, supra* 420 U.S., at 345:

> [A] defendant has no legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact.

*See People v. Rivas,* ___ Colo. ___, 591 P.2d 83 (1979) (en banc); *People v. Gennings,* 196 Colo. 208, 583 P.2d 908 (1978) (en banc); *State v. Superior Court and Grandinetti,* 124 Ariz. 290, 603 P.2d 917 (1979); *State v. Bowden,* ___ Wisc. ___, 288 N.W.2d 139 (1980); *People v. Cartwright,* 159 Cal. Rptr. 543 (1979).

## II.

The remaining question is about the jurisdiction of a trial court to vacate, modify or set aside its order of acquittal.

> There seems to be no doubt that under the weight of authority, a criminal, as well as a civil, court may, for certain purposes, set aside a judgment by an order entered during the same term at which the order set aside was spread upon the records of court. That rule, however, in criminal cases where the judgment has been satisfied in whole or in part, is limited to those cases in which the trial court reduces the penalty imposed. Cases in which the penalty is increased are treated as subjecting the accused to double jeopardy and therefore the second sentence is void. * * * *State ex rel. Williams v. Riffe,* 127 W.Va. 573, 578, 34 S.E.2d 21, 23 (1945).

*See also State ex rel. Roberts v. Tucker,* 143 W.Va. 114, 116, 100 S.E.2d 550 (1957).

A trial court, therefore, can set aside its judgment within the same term of court if defendant has not, and had not when the judgment was overruled, "satisfied in whole or in part" such judgment. Kincaid had a brief respite from his conviction, but no increase in the penal-

ty when the Court simply reinstated the jury's finding of guilty.

The writs of prohibition and mandamus are denied, and petitioner is remanded to the Penitentiary to serve his sentence.

*Writs denied.*